## ECCO HIGH FREQUENCY CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 39, Docket 20541.

Circuit Court of Appeals, Second Circuit.

April 27, 1948.

C. F. Rothenburg, of Washington, D. C. (Everett Frooks and Margaret Frooks, both of New York City, of counsel), for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen. and Helen R. Carloss and Louise Foster, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The questions involved in this appeal from the Tax Court are: (1) Whether in computing net income for income tax, declared value excess profits tax, and excess profits tax for the year 1941, there is substantial evidence to support the Tax Court's finding that $40,000 instead of $56,000 claimed by the taxpayer was a properly deductible allowance under section 23 (a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23 (a), for the personal services of Emil R. Capita who was its president, treasurer and only salaried officer during the years 1939, 1940 and 1941, and who also acted as its sales engineer; (2) whether the finding of the Tax Court that a portion of the legal fees claimed by the taxpayer as a deduction for tax purposes represented payment for services rendered by the attorney to Capita in his individual capacity and not to the taxpayer.

The business of the taxpayer, Ecco High Frequency Corporation, is the manufacture of electrical high frequency heating equipment. Capita had gained knowledge of the business of manufacturing industrial high frequency equipment through his

studies and especially through his employment as factory superintendent of the Lepel High Frequency Corporation, a concern engaged in manufacturing a high frequency converter, by which he was employed between the years 1928 and 1937. In 1937 he decided that it would be advantageous for him to set up a business of his own. To aid his purpose his uncle and aunt agreed to furnish capital to organize Ecco High Frequency Corporation, the taxpayer herein. To that end they each subscribed two thousand dollars and received 50 shares of its stock and entered into an agreement with Capita whereby they held the shares issued in their names for his "exclusive use and benefit." They also agreed that they would assign over their shares to Capita at any time upon his repayment to them of the subscription price, would make no other assignment of their shares except subject to the terms of the foregoing agreement, in the meantime would be entitled to receive all dividends paid on the shares, and in the event of the liquidation of the corporation before repayment of the subscription price would be entitled to receive two thousand dollars each while the balance of the liquidating dividends would be payable to Capita. Neither of the stockholders ever took any active part in the conduct of the business and Capita always regarded the business as his own and devoted all of his efforts to making it a success. He designed all of the equipment which Ecco manufactured, purchased all its materials and sold all its finished products. Most of the sales resulted from his personal contacts. As sales engineer of the corporation he secured contracts for particular types of equipment, supervised the manufacture and saw that the equipment was properly installed and capable of satisfactorily functioning.

The Tax Court found that it was the custom of the trade to pay commissions of 40% on sales of high frequency equipment made within the City of New York and slightly more on sales made outside of that territory. There was also evidence however that almost half of this commission was frequently in turn paid by the sales engineer to agents who secured the prospective purchasers, even though the sales engineer closed the sales himself. See Petitioner's Appendix, pp. 75, 90. The Tax Court did not apply this custom of the trade as a binding standard for fixing the value of Capita's services during the year 1941. The table appended in the margin[1] shows taxpayer's gross sales (less returns and allowances), officers' salaries, net income, federal tax, and dividends paid, for the years 1937–1941, inclusive, as reported in its income tax returns for the respective years.

At a meeting of the taxpayer's stockholders held December 16, 1939, it was agreed that Capita should receive for that year as compensation for his services commissions of 15% of its gross sales. His compensation for 1940 was raised to 30% of gross sales at a stockholders' meeting held December 16, 1940. The same percentage of gross sales, 30%, was voted to him by the directors at a meeting held December 16, 1941, with the provision however that his total compensation should not exceed $56,000 for that year. The taxpayer reported this $56,000 in its tax return for 1941 as compensation for offi-

[1]

| Year | Gross sales less returns and allowances | Officers'* salaries | Net income | Federal tax | Dividends paid |
|------|------|------|------|------|------|
| 1937 | $ 16,926.75 | $ 3,835.00 | $ 358.09 | $ 51.78 | None |
| 1938 | 21,224.87 | 2,467.00 | 667.59 | 83.45 | None . |
| 1939 | 35,581.19 | 7,040.00 | 849.57 | 106.20 | $240.00 |
| 1940 | 69,489.12 | 20,840.00 | 2,940.15 | 461.35 | 240.00 |
| 1941 | 222,346.65 | 56,000.00 | 41,274.25 | 20,779.45 | None |

* Of the 1937 and 1938 salaries the amounts of $2,400 and $427, respectively, were paid to Theo Bruning, who served as president of the company until his death in the latter part of 1938. The balance of the salaries for those years, and all of the 1939, 1940 and 1941 salaries, were paid to Capita.

cers, but the Commissioner allowed only $25,000 and disallowed the balance, $31,000, as being unreasonable. The Tax Court found $40,000 to be a reasonable amount for Capita to receive for his services in 1941.

It is evident from the foregoing that the taxpayer and Capita did not contract with reference to any general custom but fixed his compensation under the particular facts of this case at a smaller amount. In the early years when Ecco was starting its business Capita received only nominal compensation. When gross sales increased from above $35,000 in 1939 to more than $69,000 in 1940 his compensation was increased from $7,040 to $20,840. With gross sales of over $222,000 in 1941 his compensation was increased to $56,000, as stated above.

 The reasonable value of Capita's services was for tax purposes a question of fact to be ultimately determined by the Tax Court. Long Island Drug Co. v. Commissioner, 2 Cir., 111 F.2d 593, 594; L. & C. Mayers Co. v. Commissioner, 2 Cir., 131 F.2d 309, certiorari denied 318 U. S. 773, 63 S.Ct. 770, 87 L.Ed. 1143. This valuation required a consideration of the particular circumstances of Capita's relationship with Ecco, and the Tax Court was not bound to follow slavishly any general custom of the trade, which the contracting parties themselves had not considered a controlling standard. It may well be that due to the demand for this particular type of goods the sales engineer was obliged to give little effort to procuring customers, at least after they had once patronized Ecco. This the Tax Court suggested when it said that possibly "no sales efforts were required to dispose of all the equipment produced." Upon the record before us such considerations were open to the Commissioner and the Tax Court who might and evidently did differentiate the facts of the case at bar from those referred to in the testimony concerning a custom of the trade.

 The court's decision fixing the reasonable value of Capita's services at $40,-000 cannot be regarded as arbitrary, particularly where as here there is reason to

question whether all of the payment to Capita was essentially compensation for services rendered as an officer or in part included a division of corporate profits paid because of Capita's position of control of the corporation. It should be noted that all earnings not paid Capita by the corporation might otherwise accrue to his benefit as sole shareholder under the agreements permitting his purchase of the stock held by his aunt and uncle for the small sum of $4,000. Further, the amounts he received were determined at the close of each year when earnings could be ascertained, no dividends were paid to the shareholders of record in 1941 although it was Ecco's most successful year, and the Tax Court found that Capita was in complete control of petitioner.

 On the second issue on appeal, the Tax Court correctly held that Ecco was not entitled to a deduction of all the legal fees paid for services rendered to Capita as well as to Ecco. The Commissioner determined that $1,972.61 of the total amount of $4,597.98 accrued by the taxpayer as attorney's fees for 1941 could not be deducted, as such total had been paid for legal services rendered in part to Capita personally. The taxpayer had the burden of proving that determination to be erroneous. As it failed to sustain this burden, the Tax Court found that the Commissioner had fixed a reasonable deduction for fees for the services performed for Ecco and disallowed the remainder as the personal obligation of Capita. The question presented was one of fact and the decision was supported by substantial evidence and must stand. Commissioner v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171; Chenango Textile Corp. v. Commissioner, 2 Cir., 148 F.2d 296. Mr. Mariash, the attorney to whom the fees were due, represented both Capita and Ecco. Lepel Corporation, with which Capita had obtained much of his experience, brought suit against him for using certain trade secrets, patents and devices in the manufacture of high frequency heating equipment and obtained an injunction which was upheld by the Court of Appeals of New York restraining him from ever engaging in the manufacture of high frequency equipment.

586

It also sued Ecco, to prevent it from using the trade secrets, patents and devices and instituted contempt proceedings against both Capita and Ecco. The litigations were finally settled in 1941 and the attorney's fees fixed at an aggregate of $4,-597.98 without any segregation between Capita and Ecco of the amounts due by them respectively. In view of the evidence we have no basis for saying that the apportionment by the Commissioner of $1,972.61 for services rendered to Capita was arbitrary when no separate allocation of the fees had been made by the parties.

The order of the Tax Court is accordingly affirmed.