**DARCO REALTY CORPORATION,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 159, Docket 27123.

United States Court of Appeals
Second Circuit.

Argued Feb. 16, 1962.

Decided April 3, 1962.

David Oppenheim, New York City, for petitioner-appellant.

Alan D. Pekelner, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before CLARK, SMITH, and MARSHALL, Circuit Judges.

CLARK, Circuit Judge.

This case arises out of a complex real estate transaction consummated in 1927. By virtue of this transaction, which was conceived and executed by two real estate syndicators, Samuel A. Herzog and Edgar A. Levy, the petitioner, Darco Realty Corporation, controlled by Levy and Herzog, purchased on September 30, 1927, the stock of the 745—7th Avenue Corporation. The price paid was $376,-450, of which all but $75,000 constituted an immediate cash outlay. The 745—7th Avenue Corporation held a ground lease on the property at that location, for which it paid the fee owner an annual rental of $30,000, and had executed a sublease of the property to Saco Realty Corporation at a rental of $75,000 a year. This sublease ran until 1943, with an option to renew. Prior to this transaction Darco was a dormant corporate shell controlled by Samuel A. Herzog, without assets of a substantial nature.

To finance purchase of 745—7th Avenue Corporation's stock, Edgar A. Levy

and Samuel A. Herzog loaned Darco $239,600, of which Levy contributed $154,000. Another $40,000 was invested by employees or close relatives of the two principal investors, while $30,000 was put in by "outside" interests. It was agreed that these loans would be repaid with interest before any distribution of profits was made to the stockholders. Darco's 100 shares of capital stock were distributed to the investing group. Under the original agreement Levy received 50% of the stock, and Herzog 33⅓%, the rest going to the minor investors. But relying on a letter written by Levy and Herzog to the petitioner in 1939, the year the first payments were made to the shareholders as such, the Tax Court concluded that in actual fact the two major investors held only 57¹¹⁄₁₂ths of the 100 shares between them, although they had contributed approximately 77% of the capital. As controlling shareholders, Levy and Herzog became directors and chief officers of Darco. And as further compensation Darco, by corporate resolution, awarded Levy and Herzog one-quarter of the profits apiece, after repayment of the loans, as "finder's fee" and for management services. Under the latter agreement Levy and Herzog received $335,500 as "finder's fees" in the period between 1939, when the loans were repaid, and 1959. Their managerial services were slight; and for the tax year in question, 1955, there is no claim that the payments were for services rendered in that year.

In that year, 1955, Darco made payments of $16,000 to Levy and the heirs and distributees of Herzog pursuant to the agreement, and deducted this amount on its corporate income tax return. The Commissioner disallowed the deduction as not being an ordinary and necessary business expense within the purview of § 162 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162. The Tax Court upheld the disallowance. In its findings of fact, the Tax Court found that the payments were not an ordinary and necessary business expense, but were, rather, a distribution of profits, and thus could not be deducted. We affirm this finding and the holding of the Tax Court that these payments were not deductible.

As this is an arrangement between a corporation and its controlling shareholders, it must be subjected to close scrutiny to ensure that what is in reality a distribution of profits is not deducted as compensation for personal services. Heil Beauty Supplies, Inc. v. C. I. R., 8 Cir., 199 F.2d 193. For the corporation an expense is deductible if it is both ordinary and necessary; if, as here, it is a compensation for personal services, the payment must be reasonable. And whether a given payment constitutes a distribution of profits or compensation for services is essentially a question of fact. Heil Beauty Supplies, Inc. v. C. I. R., supra, 8 Cir., 199 F.2d 193. See also Ecco High Frequency Corp. v. C. I. R., 2 Cir., 167 F.2d 583, certiorari denied 335 U.S. 825, 69 S.Ct. 49, 93 L.Ed. 379. Thus the decision of the Tax Court on these matters will generally be determinative. C. I. R. v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171.

There was no evidence that an arrangement of this precise sort, where the principal investors take a large share of the profits in perpetuity as a "finder's fee," is customary in the real estate business; indeed, the evidence pointed to the contrary. Nor was there any evidence that the form this arrangement took was *necessary*. This was not an arm's-length transaction whereby one party to a deal makes concessions to another to induce investments; Levy and Herzog were the prime movers and major investors in this project, and there is nothing in the record to show that it was *necessary* for the profits to be distributed as payment for "services" before they could induce themselves to go ahead with the deal. Thus the situation here is fundamentally unlike that in George La Monte & Son v. C. I. R., 2 Cir., 32 F.2d 220, 221, relied on by petitioner. In La Monte, as a result of a merger between competing concerns, 50% of the voting stock was issued to the shareholders of each firm; and to

offset an inequality in the value of the two companies, 12½% of the profits was to be paid to the shareholders of the larger concern. This was an arm's-length transaction, and we held there that the payment "was purely a payment from the business to equalize for the additional capital assets brought into the merger." Clearly the desire to maintain a parity of control dictated payment for the excess assets in some fashion other than by stock, and this invested the arrangement with a palpable business purpose. The reasonableness of the price was not under scrutiny, as the transaction had been consummated prior to passage of the tax laws and was at arm's length.

Affirmed.