Savko Brothers Company, Inc. v. Commissioner.
Savko Bros. Co. v. Commissioner
Docket No. 90007.
United States Tax Court
T.C. Memo 1963-203; 1963 Tax Ct. Memo LEXIS 141; 22 T.C.M. (CCH) 1014; T.C.M. (RIA) 63203; July 30, 1963
*141 Reasonableness of compensation paid officer-stockholders determined. Robert E. Teaford, 50 W. Broad St., Columbus, Ohio, and C. Stanley Taylor, for the petitioner. Henry T. Nicholas and Thomas Young, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax for its taxable years ended June 30, 1957, 1958, and 1959 in the respective amounts of $6,873.11, $16,103.40, and $13.520. The only issue for decision is whether petitioner is entitled to deductions claimed on its returns for compensation paid its officer-stockholders in each of the 3 years involved. Findings of *142 Fact Some of the facts are stipulated and are found accordingly. Petitioner is an Ohio corporation with its principal place of business in Columbus, Ohio. It filed its Federal income tax returns on the basis of fiscal years ended June 30 with the district director of internal revenue, Columbus, Ohio. Petitioner was incorporated in December 1955 by brothers Nick and Charley Savko to carry on the excavation and concrete construction business [1] which they had conducted as a partnership since 1946. Nick was 37 years old in 1956 and had served in the Army in World War II and received extensive experience in construction work in a supervisory capacity during the war in Europe and Asia. After the war he worked as a superintendent of a construction job for 3 months and quit to form a partnership with Charley to engage in concrete construction work. Charley was 4 years younger than Nick. He completed 2 years of high school and served as an ensign in the Navy during the war, performing *143 engineering work. When he left the Navy at the end of the war, he worked for a short time for a construction company before forming the partnership with his brother. The partnership at first took any concrete construction business that was available. The business progressed gradually and expanded into the excavation business in 1955. During the period under review Nick was in charge of the excavating operations and Charley was in charge of the cement operations. Nick and Charley created the business operated by petitioner through their own efforts. Prior to and during the years here involved they were the only executive and managerial officers of the company and were in full charge of all its operations. They sought, computed the bids for, obtained and negotiated all the contracts, estimated and ordered the materials needed, organized, supervised, and controlled the labor necessary to do the jobs, handled the financial details, and did everything necessary to successfully complete the contracts except the actual manual labor. Petitioner employed a bookkeeper who also was in charge of the office, and several foremen who were in charge of work crews, but Nick and Charley were in *144 overall charge of all the work and were responsible for seeing that the work was completed in a satisfactory manner. They both devoted long hours to their work. It was important for them to meet and entertain people which they did without reimbursement from the company. Most of the work done by petitioner required completion bonds which were difficult to obtain because of the speculative nature of the business, and to obtain them in some instances Nick and Charley found it necessary to pledge their individual property and to mortgage their homes. Nick and Charley also purchased all the equipment used in the business and saw to it that it was kept in good repair. Due to their efforts and knowledge of equipment the company was able to acquire and use practically all secondhand equipment at reduced prices. The company enjoyed a good reputation in the cement and excavating business in Columbus due mostly to the skill and energies of Nick and Charley and the respect they earned for knowledge of their business. The authorized stock of petitioner was 100 shares of unclassified common par value $5 per share. Upon incorporation and throughout the period under review, Nick and Charley *145 each owned 49 shares and 2 shares were owned between them jointly. Nick was president; Charley was vice president and treasurer. Both were directors. A third director was elected at the first meeting of the stockholders, Bernard Bernard, who had been counsel to Nick and Charley for several years prior to 1955 and who had advised them to incorporate their business to obtain limited liability with respect to their activities. At the first meeting of the stockholders and directors of petitioner, in December 1955, it was resolved that officers' salaries were to be $250 a week for the president, $250 a week for the vice president, and $250 a month for the assistant treasurer, who was the bookkeeper. Bonuses were discussed but no action taken. On December 18, 1956, a meeting of the board of directors of petitioner was held at Charley's home. Charley, Nick, Daniel Hollern, who was petitioner's bookkeeper, Bernard, and Robert E. Teaford, petitioner's counsel, were present. At the meeting there was a report by the assistant treasurer and bookkeeper regarding the results of the operation of the business, which had been favorable, and the company's financial position, and there was a discussion *146 by the directors and their attorney concerning the advisability of authorizing bonuses. Nick and Charley felt that they were entitled to bonuses because of the work they had performed during the year. Their counsel, who was familiar with Federal tax matters, pointed out that bonuses paid them would be subject to relatively high income tax rates, but Nick and Charley persisted in their statements that they felt they were entitled to substantial bonuses and expected them. At the meeting of the board, bonuses in the following amounts were authorized: Charley
$15,000.00
Nick
15,000.00
Charles O'Reilly
575.88
Walter Balley
586.74
Paul O'Reilly
1,000.00
Daniel Hollern
100.00
Eight men - $50 each
Five men - $35 each Nick and Charley were generally unfamiliar with the significance of a fiscal accounting period and they treated a calendar year as an accounting year. At the same meeting at Charley's home, a salary schedule to begin January 1, 1957, was fixed, providing a salary of $375 per week for Nick and the same amount for Charley. At a meeting of the board of directors on June 27, 1958, bonuses in the amount of $5,000 each were authorized for Nick and *147 Charley and their salaries were increased to $400 per week beginning July 1, 1958. At a director's meeting held on September 26, 1958, Nick and Charley's salaries were increased to $500 per week each. Nick and Charley each made loans to petitioner in the following amounts and for the following purposes: 12/14/55
Partnership equipment
$ 6,769.08
2/23/56
Loan to purchase Lowboy
equipment
977.23
2/28/56
Loan to purchase excavating
equipment - new bulldozer
5,000.00
3/ 8/56
Loan to purchase excavating
equipment - new North-
west shovel
2,500.00
3/30/56
Loan to purchase excavating
equipment - Fordson back-
hoe
763.22
5/27/57
Loan to operate business
10,925.00
3/ 6/58
Loan to purchase equipment
- unit shovel
2,750.00 Payments were made by petitioner to Nick and Charley on these loans from time to time but the loans had not been repaid in full throughout the period here involved. Petitioner owed both Nick and Charley about $15,000 on these loans in December 1956. Petitioner reported gross receipts, gross profit, net income, and compensation of officers for each of the taxable years here involved in the following amounts: Year ending
Net income
June 30
Gross receipts
Gross profit
(loss)
Compensation
1957
$461,666.10
$245,152.74 [1]
($11,273.85)
$62,500
1958
555,672.88
186,677.86
26,205.24
49,000
1959
775,916.01
198,530.93
38,683.27
52,000
*148 During the first 6 months of 1957, there was a recession in the cement and excavation business in Columbus; there was an extensive amount of rain, and weather conditions for outside work were poor. Earnings of petitioner's business during these 6 months were not as good as had been anticipated by the directors at their meeting of December 18, 1956. Neither Charley nor Nick charged any expenses to petitioner for entertainment or travel, except that a Plymouth station wagon belonging to petitioner was used by them to travel from job to job or from the office to a job. Neither Charley nor Nick took any vacation or received any vacation pay from petitioner. They worked full time for petitioner and put in long hours. Petitioner claimed a deduction for compensation paid to Nick and Charley on its tax returns for its fiscal years ending June 30, 1957, 1958, and 1959 in the total amounts of $62,500, $49,000, and $52,000, respectively. These amounts were actually paid to Nick and Charley in those years, *149 the $62,500 being comprised of basic salary of $250 per week from July 1, 1956, to December 31, 1956, and $375 per week from January 1, 1957, to June 30, 1957, plus the $15,000 bonus paid to each during fiscal 1957, the $49,000 being basic salary of $375 per week plus the $5,000 bonus paid to each during fiscal 1958, and the $52,000 being basic salary of $500 per week paid to each during fiscal 1959. Respondent determined that reasonable compensation for Nick and Charley was $13,000 per year each for all of the taxable years in controversy and disallowed the remainder of the amounts paid as a deduction. Reasonable compensation for Nick and Charley each for services actually rendered during the taxable years 1957, 1958, and 1959 was in the respective amount of $24,500, $24,500, and $26,000. Opinion In computing taxable income, a deduction is allowable for all of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including "a reasonable allowance for salaries or other compensation for personal services actually rendered." Sec. 162(a)(1), I.R.C. 1954. Whether the officers' regular compensation *150 plus bonuses constituted reasonable allowances for personal services actually rendered so as to be deductible is a question of fact to be determined on the basis of the particular circumstances in the case. Huckins Tool and Die, Inc. v. Commissioner, 289 F. 2d 549 (C.A. 7, 1961), affirming a Memorandum Opinion of this Court; Ecco High Frequency Corp. v. Commissioner, 167 F. 2d 583 (C.A. 2, 1948), affirming a Memorandum Opinion of this Court, certiorari denied 335 U.S. 825 (1948); Geiger & Peters, Inc., 27 T.C. 911 (1957). Respondent's determination as to reasonableness is presumed to be correct, and the burden is upon petitioner to prove that the amounts paid Nick and Charley were in fact reasonable compensation for services actually rendered. Botany Worsted Mills v. United States, 278 U.S. 282 (1929). While petitioner must prove that the total amounts are reasonable, it must also prove reasonableness with respect to the compensation paid each officer. L. Schepp Co., 25 B.T.A. 419 (1932); Shield Co., 2 T.C. 763 (1943). Except as hereinafter noted we think petitioner has carried its burden *151 of proof. The evidence with respect to the duties, responsibilities, and activities of Nick and Charley, which we have digested in our Findings of Fact, clearly indicates that the success or failure of petitioner's business was dependent almost entirely on the efforts and abilities of these two men. Petitioner also introduced the testimony of witnesses, though possibly not the best qualified, that people employed in somewhat the same capacities in similar businesses in the same area were paid $23,000 to $25,000 per year and that people engaged in somewhat similar businesses in the Columbus area would expect to have to pay salaries of at least $25,000 per year to obtain the services of persons having the capabilities of Nick and Charley. That their efforts could produce income at least equal to the compensation paid them by petitioner is borne out by the fact that, except for fiscal 1957, the company reported a net profit after payment of the compensation to Nick and Charley, and it is obvious that had Nick and Charley chosen to continue the business as a partnership they would have earned more income than they actually received from petitioner in fiscal 1958 and 1959. Respondent *152 offered no evidence to support his determination. We assume that respondent's determination was based on the salaries voted for Nick and Charley when the corporation was first formed. However, the business was growing, the corporation was new, and the evidence also indicates that the directors contemplated payment of bonuses to Nick and Charley as soon as the corporation could afford it. In our opinion the evidence presented by petitioner overcomes the presumptive correctness of respondent's determination for each of the years here involved and also supports our conclusion that the amounts paid Nick and Charley for petitioner's fiscal years 1958 and 1959 were reasonable compensation for services actually rendered by them. We do not believe the evidence justifies a finding that the entire amounts paid Nick and Charley for petitioner's fiscal year 1957 were reasonable compensation for services. They were each paid a total of $31,250 for that year, including the $15,000 bonuses voted in December of 1956, which was more than they were paid in any of the succeeding years. This was the first full year of the corporation's existence. The amount of business it did in this year was less than *153 it did in the following years and, even though it may have been due to unfortunate weather conditions during the first part of 1957, the corporation reported a net loss for fiscal 1957. There is no evidence to suggest that the services of Nick and Charley were more extensive or more valuable to the corporation during fiscal 1957 than they were during the years following, and there is lacking the growth factor which we believe justifies the increase in compensation from fiscal 1958 to fiscal 1959. On the evidence presented we are of the opinion that $24,500 each was reasonable compensation for the services rendered by Nick and Charley for petitioner's fiscal year 1957, and we have so found as a fact. But the fact remains that Nick and Charley were the sole stockholders of petitioner and that petitioner paid no dividends as such during the years in question. We are therefore confronted by the possibility, usually present in such cases, that corporate earnings may have been distributed to officer-stockholders in the guise of compensation. The testimony of the officers consequently requires a careful review to determine whether the amounts were intended to be compensation. The only *154 evidence we have on this point is the uncontradicted testimony of the three directors and the others who attended the meetings at which the salaries and bonuses were fixed that the amounts to be paid to Nick and Charley were intended as compensation for their services. We attach no significance to the fact here that Nick and Charley were paid the same amounts proportionate to their stockholdings. They each devoted their full time and energies to the business and so far as we can determine were equally responsible for the success thereof. The record otherwise belies the fact that they were merely trying to take money out of the corporation while at the same time providing the corporation with a deduction. Had tax savings been the predominant motive, it may be supposed that petitioner would have repaid Nick and Charley the indebtedness owed them. Instead they were paid a bonus in fiscal 1957 upon which they paid individual income tax and were later forced to loan the money back to the corporation for working capital. The corporation was not in a financial position to pay dividends during the period here involved, and we are convinced the amounts paid Nick and Charley were intended as *155 compensation for services rendered. We do feel that a part of the bonus voted them in December of 1956 was based too much on anticipated business for the following 6 months and was unreasonable as compensation for the services actually rendered during fiscal 1957 to the extent of $6,750 each. On this issue we hold that the amounts deductible by petitioner as compensation for services rendered by Nick and Charley are a total of $49,000 for each of its fiscal years 1957 and 1958, and $52,000 for its fiscal year 1959. To reflect the adjustment made on this issue for 1957 and other uncontested adjustments, Decision will be entered under Rule 50. Footnotes
1. In referring to "business" of petitioner in the singular, we make no findings as to whether it conducted two separate businesses. The partners started into the excavation business in 1955.↩
1. Salaries and wages were not deducted in computing gross profit on the return for fiscal 1957 but were deducted in computing gross profit on the returns for fiscal 1958 and 1959.↩