WEST INDIA MACHINERY AND SUPPLY CO., Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 610.      Decided October 1, 1963.

114

*Manuel J. Medina Aymat* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

In this petition West India Machinery & Supply Co. challenges the determination of the Secretary of the Treasury of Puerto Rico, appellee herein, refusing to allow deductions from appellant's gross income for (1) certain bonuses paid to its President and General Manager, Raymond W. Garffer for alleged services rendered in previous years, and (2) certain expenses incurred by appellant during 1954 and 1955 in the operation and depreciation of a yacht owned by him and which was partially used to develop, improve, and promote goodwill for his business. We recite below the facts pertinent to this case.

Appellant has been a close, family corporation during the years involved in this litigation, that is, from 1945 through 1955, its shares being owned in 1945 by F. J. Garffer, Jean W. L. Garffer, and their children Grace, James, and Raymond W. Garffer. When F. J. Garffer retired from the active management of the business, his son Raymond was elected President of the corporation. None of the other stockholders worked in appellant's business during those years. Upon his father's death in 1948, Raymond Garffer assumed the management and exclusive direction of the business. In May 20 of that year, appellant's stockholders entered into an agreement in which it was stated that they had decided to discontinue the annual bonus of 50 percent of appellant's profits which was agreed to be paid to Raymond Garffer after deducting the sum of $40,000 from said profits, by resolution approved on May 26, 1945, such bonus to be applied to the purchase of appellant's stock by Garffer, until he had obtained 40 percent of all the stock issued by the latter. It was further agreed in said contract, in exchange of said bonuses, to issue to Garffer 883.1657 shares of the corporation stock with a value of $88,316.57, and in payment thereof Garffer would issue six notes, and that a resolution would be adopted authorizing the payment of a

bonus to Garffer in the amount of each of said notes, for the purpose of paying and cancelling, with the profits of said bonuses the aforesaid notes.[1]

In order to implement in part said agreement, according to the findings of the trial court, in each of the five years

---

[1] Said agreement is drafted in English. Its text is as follows:

"WHEREAS by resolution adopted on the 26th day of May, 1945, West India Machinery & Supply Co., of which the undersigned are all stockholders, entered into a bonus agreement with Mr. Raymond W. Garffer whereby he was to receive, as long as he should be retained in the capacity of President and General Manager of said corporation, and for a period of fifteen (15) years, a bonus of 50 per cent of the net profits of said corporation after deducting the sum of $40,000 from said net profit;

"WHEREAS by virtue of said agreement Raymond W. Garffer has received part of such bonuses and has now accrued certain amount of such bonuses, which although they have not been journalized, amount to $57,014.52;

"WHEREAS the said agreement and resolution also contemplated that said bonuses should be applied to the purchase of sufficient stock of West India Machinery & Supply Co. by Raymond W. Garffer to bring up his stockholding interest in said corporation to 40 per cent of the issued capital stock thereof;

"WHEREAS by resolution of this date approved by the stockholders of said West India Machinery & Supply Co., it was decided, with the consent of Raymond W. Garffer, to discontinue the said bonus agreement and rescind the same, and in consideration therefor, it was agreed that the corporation would issue to Raymond W. Garffer 883.1657 shares of its capital stock, which amount would bring Mr. Garffer's stockholding interest to 40 per cent of the issued capital stock, and it was further agreed that in payment thereof Raymond W. Garffer would issue six notes payable each year for six years in an amount of $11,402.92 the first one,. $11,402.90 each of the following four notes and $31,302.05 the sixth note;

"WHEREAS the total amount of said notes would come to $88,316.57, of which amount Raymond W. Garffer has already earned as bonus $57,014.52, and it is expected that he will earn an additional bonus for this current year;

"WHEREAS the stockholders hereinafter appearing have agreed that Raymond W. Garffer shall not be called upon to pay the $57,014.52 which he has already earned, nor such amount as he may earn during the current year, but has issued notes therefor;

"NOW, in consideration of the mutual benefits to all parties accruing, it is agreed as follows:

subsequent to said agreement, which includes the years 1951 and 1952 involved herein, appellant paid Garffer the agreed bonus, amounting for the five years to $57,014.52. The balance of $31,302.05 (represented by the sixth note) of the total value of the shares, that is, from the sum of $88,316.57, was paid to Garffer by appellant in different amounts during the years 1953, 1954, and 1955. Garffer received a salary

---

"1. The undersigned stockholders agree that, as each one of the first five notes signed on this date by Raymond W. Garffer matures, they shall cause West India Machinery & Supply Co. to adopt a resolution authorizing the payment of a bonus to Raymond W. Garffer in the amount of each of said first five notes, which bonuses shall be applied to the payment and cancellation of said five notes.

"2. The stockholders further agree that at the end of the present fiscal year of the corporation the bonus corresponding to Raymond W. Garffer for the year 1948 shall be computed as if the bonus agreement had stayed in full force and effect for said fiscal year 1948. If the amount of said bonus shall exceed the sum of $31,302.05, then the undersigned stockholders undertake that, at maturity of the sixth note, they shall cause the adoption by West India Machinery & Supply Co. of a resolution granting such bonus to Raymond W. Garffer up to the amount of $31,302.05, and said bonus shall be applied to the payment and cancellation of the said note, it being understood that Mr. Raymond W. Garffer shall not receive any amount in excess of the said amount of $31,302.05.

"3. If the said bonus for 1948 shall not reach the sum of $31,302.05 then, whatever amount is earned during 1948 shall be voted, at or before maturity of the sixth note as a bonus as partial payment for the said sixth note, and Mr. Raymond W. Garffer will then be obligated to pay whatever amount may be necessary to make up the full $31,302.05, when the said sixth note shall mature.

"4. It is understood that, inasmuch as the above mentioned notes provide for payment of interest after maturity, the stockholders undertake to cause the said bonuses to be paid at or before maturity, so that in no event shall Raymond W. Garffer be called upon to pay any interest and that, if for some unforeseen reason, payment of said bonuses cannot be made at maturity, then the stockholders agree that they will cause West India Machinery & Supply Co. to adopt the necessary resolution or resolutions condoning any such interests.

"5. It is further agreed that in the event of the death of Raymond W. Garffer, his heirs or one of his heirs shall be placed in such position by West India Machinery & Supply Co. as will justify and warrant the continuation of this agreement until the same shall have been fully complied with, since it is the intention of the parties that Mr. Raymond W. Garffer's heirs shall receive the full benefit of this agreement without jeopardizing the tax benefits accruing herefrom."

of $9,000 in 1951 and 1952, and of $14,000 from 1953 to 1955, plus another bonus amounting to 50 percent of his annual salary.

Appellee refused as deductible expenses from appellant's income the bonuses paid to Garffer according to said agreement, and notified appellant certain deficiencies for each one of the years from 1951 to 1955, inclusive. Also according to the notice of deficiency of October 4, 1961, the deduction of the expenses for the operation and depreciation of the aforesaid yacht was reduced to 10 percent of the items claimed, that is to $597.03 in 1954 and to $999.57 in 1955.

Feeling aggrieved by these determinations, appellant filed a complaint in the Superior Court, San Juan Part, requesting that the deficiencies assessed by appellee be set aside. To that effect it alleged that the latter did not admit as deduction the bonuses paid by appellant to Garffer during the years 1951 to 1955 and refused to accept as deductible the expenses incurred by the plaintiff during the years 1954 and 1955 in the operation and depreciation of the aforesaid yacht. Appellee answered denying in part the allegations of the complaint and also adducing that *"the payments made to Garffer during the period from 1951 to 1955, both inclusive, do not constitute a bonus for services actually rendered, but were dividends paid by the plaintiff."* (Italics ours.)

The case having been heard on the merits the trial court rendered judgment on September 13, 1961 dismissing the complaint except as to the deficiencies for the depreciation and operation of the aforesaid yacht, which deficiencies were reduced 10 percent. Said judgment was based on the fact that there was no evidence to support the reasonableness of said remuneration in the years the profits were obtained and the services remunerated were rendered, nor anything to warrant the novation of the obligation assumed by plaintiff under the agreement of 1945.

Appellant assigns the commission of two errors committed by the trial court as follows:

1. That finding No. 5 that appellant "did not offer evidence to warrant the reasonableness of the additional remuneration to his salary, agreed to be paid to Mr. Garffer for his services," is erroneous, and likewise finding No. 1 that there is no basis in the evidence "to support the reasonableness of said remuneration."

2. That the conclusion limiting the deduction for the expenses of depreciation and operation to 10 percent and the deduction for the depreciation of the aforesaid yacht, to which appellant was entitled as ordinary expenses of the business during the years 1954 and 1955 is also erroneous.

1.—In support of the first assignment appellant argues that at no moment did appellee question the reasonableness of the payment, or whether the services were actually rendered; to the contrary, the trial court found that Garffer had rendered services to appellant; that if it was alleged that the bonuses challenged were dividends, the taxpayer cannot be required to prove their reasonableness; that there is sufficient evidence in the record to support the reasonableness of the remuneration consisting in figures of appellant's gross income of approximately two million dollars in each one of the years from 1951 through 1955, of net incomes of $150,000 to $290,000 annually during said period, of the existence of a nucleus of 78 employees, which makes Garffer's salary of $9,000 and then $14,000 ridiculous compared with the magnitude of his services, and of the volume of business executed by appellant. Appellant further argues that since appellee failed to introduce any evidence, according to our ruling in *Carrión v. Treasurer of P.R.*, 79 P.R.R. 350 (1956), the taxpayer's evidence must be weighed independently of the presumption of correctness, "under the robe of correctness covering the administrative determinations" of appellee for purposes of determining whether the evidence

sustains its contention; and that said evidence is worthy of credit for it was not opposed.

On the contrary, the Solicitor General states that the grounds adduced by appellee to reject the deductions in question were conceived in broad terms, so that the trial court did not decide this case on a ground, in addition to or different from the one stated by appellee; that appellant did not prove, as he was bound to do, that: (1) the remuneration under consideration was reasonable—the payments were made for services rendered during the years 1945–1948, but the evidence tended to show the reasonableness of those payments during the years 1951 to 1955; (2) the payments in question established a compensation for services—the terms of the agreement previously mentioned prove the intention of the parties to make the payments for the purpose of allowing Garffer to acquire 40 percent of the stock of the corporation; besides, it seems illogical that during the years of greater activity of the corporation, that is from 1951 to 1955, appellant did not give Garffer the additional bonus rejected by the Treasurer but paid him a substantially lower remuneration; (3) the evident purpose of said agreement was to have one of the members of the Garffer family in control of the formulation of the economic policy of the corporation and pursuant to that purpose, the agreement was executed and terminated as soon as Garffer accumulated sufficient bonuses to buy, as he did, up to 40 percent of appellant's stock; (4) the payments made may be of the nature of dividends although they do not keep relation with Garffer's stockholding.

Finally, in view of the fact that the trial court did not make findings of fact in regard to the intention of the parties in executing the agreement of 1948, the Solicitor General indicates that the case may be remanded, so that such findings be made.

For present purposes we believe it is necessary to make a brief summary of the law applicable to the question under consideration.

Section 32(a)(1) of the Income Tax Act of 1954 (13 L.P.R.A. § 3023(a)(1)(A)), allows, among other deductions, "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a *reasonable allowance for salaries or other compensation for personal services actually rendered . . . .*" (Italics ours.)

■ The presumption of correctness of the determinations by the Secretary of the Treasury dissipates as soon as creditable and reasonable evidence is offered and received to support the position of the taxpayer and the Secretary of the Treasury is required to present evidence in support of his contentions, it being incumbent on the trial court to determine the facts involved as in any other civil case, that is, on the basis of the preponderance of the evidence. *Reyes* v. *Secretary of the Treasury*, 84 P.R.R. 574 (1962); *Central Igualdad, Inc.* v. *Secretary of the Treasury*, 83 P.R.R. 44 (1961); *Carrión, supra; Huckins Tool & Die, Inc.* v. *C.I.R.*, 289 F.2d 549 (7th Cir. 1961). On review the Secretary may also adduce additional and inconsistent reasons to sustain his determination of deficiency, but in that event it is required that these other reasons be specifically alleged by way of affirmative defense, and if he fails to do so, they are not covered by the presumption of correctness, and, therefore, he has the burden of proof. *Ramón* v. *Secretary of the Treasury*, 84 P.R.R. 423 (1962). Deductions are a matter of legislative grace, and they should be restrictively construed against the person alleging a right thereto. Where there is involved a close or family corporation, the taxpayer must offer stronger proof of the reasonableness of the salaries paid by it than in other cases. *Clínica Juliá* v. *Secretary of the Treasury*, 76 P.R.R. 476 (1954);

*Buscaglia, Treas.* v. *Tax Court,* 67 P.R.R. 548 (1947); *Sobrinos de Izquierdo, Inc.* v. *Sancho Bonet, Treas.,* 56 P.R.R. 173 (1940).

■■ The question of whether or not the salaries are reasonable is one of fact to be determined by the trial court and this Court could only alter the conclusion reached by said trial court if the record does not show that there existed sufficient evidence to support its conclusions. *Casanova & Cía. Sucrs., Inc.* v. *Court of Tax Appeals,* 61 P.R.R. 630 (1943). In determining the reasonableness of the salaries we must consider different factors such as the nature of the services actually rendered by the employee; the results attributable to such services; whether the taxpayer received the exclusive attention of the employee and whether the latter rendered his services exclusively to the taxpayer in return for the compensation; whether the amounts denominated as compensation are payable to employee-stockholder in approximate proportion to his stockholding; the payment made by the taxpayer of dividends as such; the comparison of the compensation in dispute and the compensation (either total or at the rate of products sold) paid during other years when the employee's duties and responsibilities were about the same; the gross and net incomes of the taxpayer and the relation, if any, between compensation and taxpayer's operations and economic conditions; the comparison between the disputed compensation and the amounts paid by enterprises engaged in similar activities for similar work; the record and training of the employee; his previous earning capacity and his suitability for the work performed for the taxpayer; whether the compensation was fixed at the end of the tax year when profits could be estimated with accuracy; whether the method used by the taxpayer to compensate his employees is in accordance with the usual practices of the industry (although "usual" fees or bonuses were not accepted as deductible), unless for some other reason

they constitute reasonable compensation for outstanding services actually rendered; whether the tax avoidance motive of receiving a deduction in a year of high corporate income has prompted the decision to pay the purported compensation; and whether *the amount paid as compensation was in fact intended as such. Buscaglia, Treas.* v. *Tax Court,* 65 P.R.R. 339 (1945); *King, Quirk & Co., Inc.,* 61274 P-H Memo T.C. (Vol. 30 at p. 1561 (1961)); 4 Mertens, Law of Federal Income Taxation, § 25.69.[2]

■ The determination of whether the payment of alleged compensation is really a payment of dividend does not depend exclusively on the payment being made to the stockholders in proportion to their stockholding. In *Central Igualdad, Inc., supra,* we held that bonuses paid by a sugar enterprise to its colonos directors and stockholders, of fifty cents for each ton of superior cane delivered to the enterprise mill in definite months constituted a distribution of dividends and we specifically stated that the lack of proportional identity between the percentage of stock owned by each of the stockholding colonos and the total stock issued by plaintiff and the percentage of the payments made as bonus is not controlling, "since a distribution may be considered as a dividend if no dividend has been formally declared by the board of directors, or the disbursement is not made proportionate to the holdings of each stockholder of the capital stock, and even when there are stockholders who do not participate in the distribution." *Darco Realty Corp.* v. *C.I.R.,* 301 F.2d

---

[2] II Washington & Rothschild, Compensating the Corporate Executive 758 (3d ed. The Ronald Press Company, 1962); Frommer, Jr., *Compensation and Its Fringes,* N.Y.U. 21st Inst. of Fed. Tax. 375, 378; Brodsky, *What Constitutes Reasonable Compensation; Contingent Compensation Plans; Factors in Proving Reasonableness of Compensation,* N.Y.U. 19th Inst. of Fed. Tax. 169, 174; Wolder, *How the Tax Court Treats Reasonable Compensation,* 39 Taxes 473; Johnson, *Reasonable Corporate Salaries,* 20 Ind. L.J. 83. Note, *The deduction of a reasonable allowance for salaries—The undefined power of the Commissioner,* 56 Harv. L. Rev. 997.

190 (2d Cir. 1962) ; *Heil Beauty Supplies* v. *Commissioner of Internal Revenue,* 199 F.2d 193 (8th Cir. 1952) ; *Ecco High Frequency Corp.* v. *Commissioner of Internal Revenue,* 167 F.2d 583 (2d Cir. 1948). We also stated, in *Central Igualdad, Inc., supra,* that we have repeatedly held that as far as the weighing of documentary evidence is concerned, we hold the same position as the trial court. The reasonable compensation which qualifies as ordinary and necessary expense for personal services actually rendered in a period may be paid by the enterprise which receives them from its income derived during subsequent periods. *Lucas* v. *Ox Fibre Brush Co.,* 281 U.S. 115 (1930) ; *Associated Theatres Corporation, Petitioner* v. *Commissioner of Internal Revenue, Respondent,* 14 T.C. 313 (1950) ; R. T. Bochm, *Compensation Arrangements in Smaller Corporations,* 29 Cinn. L. Rev. 157, 175. In *Lucas, supra,* the evidence showed that the corporation received large benefits *during the years in which the services were performed.*

■ Appellee did not adduce as a ground for disallowing deductions nor allege as defense in his answer that the bonus did not constitute a "reasonable amount for salaries or other compensation for services actually rendered." Therefore, as we stated in *Ramón, supra,* appellee had the burden of proving the unreasonableness of the compensation. Considering that no evidence was presented to that effect, the trial court erred in affirming the deficiencies notified on the ground that there was no evidence "to support the reasonableness of the deductions in question in the years in which he received greater benefit and in which the remunerated services were supposedly rendered."

■ Nevertheless, the judgment appealed from should be affirmed although on a different ground. A careful consideration of the agreement made by appellant's stockholders in 1948 shows, however, that those bonuses were applied to

the purchase of shares issued by appellant and, in effect, by virtue of said agreement the necessary shares were issued to Garffer and their value was paid for with the product of said bonus accumulated during the period from 1945 to 1948, but derived in great part from appellant's income mostly earned from the years 1951 to 1955, both inclusive. Hence, they were payments made for the purpose of acquiring property and not as reasonable compensation for services actually rendered. As the Solicitor General states, it seems illogical that for a period of great economic activity, that is the period between 1951 and 1955, in which Garffer's work must have increased although his responsibilities stayed the same, his remuneration decreased compared to the one he alleges he received during the period from 1945 to 1948. Appellant did not show that it was intended by said agreement that the payments of said bonuses be considered as compensation.

2.—The evidence in support of the deduction as expenses of depreciation and operation of the yacht, rejected by the Treasurer, consisted of Raymond Garffer's testimony to the effect that appellant acquired a Chriscraft cruiser type, 37 feet long, which was "mainly used for pleasure, for promotion . . . pleasure of the persons connected with appellant's business including the employees"; that his family did not use it; that Garffer himself used it when he had a business client in the yacht, reciting to that effect the names of various of the clients who used the yacht. Garffer could not state definitely what percentage was strictly business trips, but he admitted that not all of them were business trips, although very few were pleasure trips, as he had no time; that the yacht was used to promote the sale of marine material and hardware which appellant had for sale. The record of the trip's incidents, that is, the logbook, was presented in evidence, without objection. It appears therefrom that the yacht was used by persons surnamed Garffer such

as Pilar Garffer and Ray, Jr. Although many of the persons mentioned by Garffer in his testimony as clients or otherwise connected with the business and who were entertained in the yacht appear in said logbook, it is also true that according to said logbook, the yacht was used substantially for purposes which it was not proved were connected with appellant's business.

In *Carrión, supra,* we held that the deduction for travel and business expenses may be established by any admissible and trustworthy evidence even if it is not complete and accurate (in this case the evidence consisted of the testimony of the executive who incurred such expenses) in the absence of lists, bills, vouchers, invoices, receipts and records; and that a deduction should be allowed on the basis of a computation of what ordinarily and in good economic sense, in view of all the circumstances of the case and the taxpayer's business, constitutes a reasonable amount for such expenses; *in making this approximate computation the trial court has an ample discretion which may rarely be disturbed on appeal.*

The fact that the necessary basis for admission of said logbook was not established is immaterial, since its admission was not objected to. When the use of, and the entertainment in, a yacht is done by the stockholder controlling the corporation, the latter must carry the heavy burden of proving what portions thereof were proximately related to the business and that such business expenses were ordinary and necessary. *United Aniline Company,* 62060 P.H. Memo T.C. (Vol. 31 at p. 371, 1962).

Considering the evidence presented as a whole, we conclude that the decision of the trial court to the effect that only 10 percent of the depreciation and operation expenses of the yacht in question was deductible is supported by the evidence.

128

For the reasons stated the judgment appealed from will be affirmed.