Practical Mechanics, Inc. v. Commissioner.
Practical Mechanics, Inc. v. Commissioner
Docket No. 3807-67.
United States Tax Court
T.C. Memo 1968-284; 1968 Tax Ct. Memo LEXIS 15; 27 T.C.M. (CCH) 1519; T.C.M. (RIA) 68284; December 11, 1968, Filed James B. Young, 1911 Kentucky Home Life Bldg., Louisville, Ky., for the petitioner. Frederick W. Krieg, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determeined deficiencies in petitioner's income tax for the taxable years 1963 and 1964 in the respective amounts of $10,798.96 and $13,470.72. After concessions by both parties, the only issue is whether amounts paid to its president and sole stockholder in these taxable years was reasonable compensation for services rendered. Findings of Fact Some of the facts are stipulated and are found accordingly. 1520
*16 Petitioner is a corporation organized under the laws of Kentucky in 1954, whose principal place of business at the time of filing the petition herein was Louisville, Kentucky. Its corporate income tax returns for the years 1963 and 1964 were filed on an accrual basis with the district director of internal revenue, Louisville, Kentucky. At all times pertinent, all of the issued and outstanding shares of stock of petitioner were owned by its president, B. Carlton Neat (hereinafter Neat). Petitioner never paid any dividends. Petitioner is a tool and die firm, which uses precision machining techniques to manufacture tools that are used in industry for production work. Each job is contracted individually and must fulfill specified requirements, so that petitioner does not operate a production line. It has become one of the largest tool and die makers in Kentucky. When Neat assumed control in 1955, petitioner was not operating and had no employees. During 1963 and 1964, petitioner had between 20 and 30 employees, all of whom were skilled craftsmen earning between $12,000 and $13,000 per year. From its inception, petitioner operated in a portion of a warehouse but moved in 1964 *17 to its new and present location, where its plant covers 26,000 square feet. Petitioner is subject to competition from numerous firms throughout the Louisville area, and, because freight is a negligible percentage of total cost, petitioner is also in competition with firms in Cincinnati, Columbus, Dayton, Evansville, Indianapolis, Lexington, Nashville, and St. Louis. Neat was petitioner's sole executive and salesman from 1955 until the spring of 1964. His duties included supervising production, selling, estimating, designing, purchasing, and negotiating union contracts. Neat devoted all his working time to petitioner, took few holidays, and on occasion worked continuously as long as 36 hours in petitioner's plant. His prior industrial experience consisted of work as a tool and die maker in the Louisville Naval Ordinance Plant and in supervisory capacities with Cochran Foil Company. In the spring of 1964, the position of general foreman was established and one of the shop personnel, a Mr. Heinz, was appointed as a salesman. Heinz obtained a new account with General Electric during 1964 which accounted for approximately 25 percent of petitioner's gross sales in that year. In October *18 1964, Neat obtained longterm financing for petitioner in the form of a $110,000 mortgage with Louisville Industrial Foundation (hereinafter Foundation) in order to finance new facilities. Petitioner and Neat simultaneously executed a subordination agreement which provided that all Neat's present and future claims against petitioner were to be subordinated to the indebtedness to the Foundation. Such claims were to be evidenced by fiveyear unsecured, promissory notes which could not be redeemed prior to their maturity dates without the written consent of Foundation. Neat received salary and bonus for 1963 and 1964 as follows from petitioner and reported the same in his personal income tax returns for those years: Year
Salary
Bonus
1963
$16,120.00
$20,000.00
1964
17,336.65
26,000.00
Six thousand two hundred dollars of the bonus for 1963 was evidenced by a fiveyear note as of the date of the aforesaid subordination agreement and $12,000 of the 1964 bonus was similarly evidenced. The following table shows pertinent aspects of petitioner's financial status during relevant periods: Year
Gross sales
Net profit
Net
Salary
Net Bonus
Total
(before
additionto
tax)
surplus
1955
$ 20,331
$ 7,640
$ 5,495
$ 1,200.00
1956
60,851
8,360
5,542
10,325.00
1957
115,484
12,319
8,317
$ 9,700.00
$ 8,200
17,900.00
1958
140,598
13,436
9,087
11,475.00
8,525
20,000.00
1959
140,916
11,316
7,639
11,700.00
3,565
15,265.00
19 60
222,271
15,667
10,116
11,700.00
11,300
23,000.00
1961
206,827
8,007
4,944
11,700.00
11,300
23,000.00
1962 355,510
27,493
22,608
15,600.00
12,400
28,000.00
1963
489,091
32,581
21,391
16,120.00
20,000
36,120.00
1964
641,587
58,160
37,047
17,336.65
26,000
43,336.65
*19 1521 Respondent determined that the entire bonus for each of the years 1963 and 1964 was unreasonable and therefore not deductible by petitioner. Ultimate Finding of Fact The amounts of $30,120.00 and $34,336.65 were reasonable compensation for the services rendered by Neat to petitioner for the years 1963 and 1964, respectively. Opinion The sole issue herein is whether the salary and bonuses paid by petitioner to its president and sole stockholder during the years 1963 and 1964 in the amounts of $36,120.00 and $43,336.65, respectively, were reasonable compensation for services rendered. Respondent determined that all amounts in excess of salaries of $16,120.00 and $17,336.65 were unreasonable and therefore nondeductible by petitioner. Section 162 [1] of the 1954 Code provides that - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered. Section 1.162-7(b)(3), Income Tax Regs. *20 , provides that "[in] any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances." The issue of reasonableness of compensation for personal services presents a question of fact. Huckins Tool and Die, Inc. v. Commissioner, 289 F. 2d 549 (C.A. 7, 1961), affirming a Memorandum Opinion of this Court; Ben Perlmutter, 44 T.C. 382 (1965), affd. 373 F. 2d 45 (C.A. 10, 1967). Respondent's determination is presumed to be correct, and petitioner has the burden of proving error. Botany Worsted Mills v. United States, 278 U.S. 282 (1929). The particular circumstances of each case are determinative (e.g., Golden Construction Co. v. Commissioner, 228 F. 2d 637 (C.A. 10, 1955), affirming a Memorandum Opinion of this Court and are influenced by an evaluation of the various factors involved, such as the employee's qualifications, the nature, scope, and extent of his work, the size, complexities, and economics of the business, and whether the payments were disguised dividends. See Mayson Mfg. Co. v. Commissioner, 178 F. 2d 115, 119 (C.A. 6, 1949); J. Warren Leach, 21 T.C. 70, 77 (1953). *21 Neat was the sole owner and dominant officer of the corporation, and his bonus was fixed after consulting with the petitioner's lawyer and accountant. Under such circumstances, the reasonableness of the compensation is subject to close scrutiny. See Heil Beauty Supplies v. Commissioner, 199 F. 2d 193, 194 (C.A. 8, 1952), affirming a Memorandum Opinion of this Court; Ecco High Frequency Corp. v. Commissioner, 167 F. 2d 583, 585 (C.A. 2, 1948), affirming a Memorandum Opinion of this Court. We see no need to set forth in detail the analysis which led us to the ultimate finding of fact which we have made. Among the factors which we considered are the following: (1) Neat worked long and hard to bring petitioner from a dormant state to a thriving business with annual gross sales in excess of $600,000 and a dominant position as a tool and die manufacturer in Kentucky. (2) Skilled craftsmen employees were paid $12,000 to $13,000. To allow petitioner to pay Neat only $4,000 or so more, as respondent suggests, is wholly unjustified, given Neat's experience, ability, and far greater responsibilities. (3) While the acquisition of additional supervisory and sales *22 personnel in 1964 may have alleviated the burdens of detail which had previously been imposed upon Neat, he retained ultimate responsibility for the operations of an organization of increased complexity and producing additional sales. (4) The constant growth of petitioner in terms of sales and number of employees. (5) We attach little weight to the fact that portions of the bonuses were referred [2] under the subordination agreement with Foundation. Such agreements are generally more a reflection of the desire of a creditor to protect his position through restrictions 1522 on outlays of cash rather than a determination of the value of services actually rendered. (6) The bonuses were admittedly fixed in relation to profits and after such profits had been determined. The proposition that bonuses are employment incentives to a solestockholder employee has an aura of fantasy, in view of the community of interest that exists between a corporation and its principal shareholders. Similar reasoning results in the attachment of little, if any, weight to the presence or absence (as is the case herein) *23 of any formal authorization by a board of directors covering such compensation. Moreover, an analysis of the respective tax brackets of petitioner and Neat indicates that the bonus level came very close in each year to the amount which would not be taxable to Neat at a higher rate than to petitioner - i. e., the break-even point taxwise. Finally, petitioner had no dividend history. (7) The only evidence as to compensation of employees in loosely comparable circumstances consisted of the testimony of a competitor that, during the period in issue, he received approximately $20,000 annually in salary and bonus. We hesitate to second-guess businessmen as to matters such as are involved herein. Cf. Malone & Hyde, Inc., 49 T.C. 575 (1968). Nevertheless, we are convinced that a portion of the bonus paid to Neat in each of the taxable years before us was excessive. Doing the best we can with the record as a whole, we have determined, as our findings of fact show, that $14,000 and $17,000 of the bonuses for 1963 and 1964 constituted reasonable compensation. To reflect our determination and the concessions of the parties, Decision will be entered under Rule 50. Footnotes
1. All references, unless otherwise specified, are to the Internal Revenue Code of 1954.↩
2. Respondent does not contend that section 267 has any applicability herein.↩