CYRUS W. SCOTT MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83451.   Promulgated April 15, 1938.

*Walter E. Barton, Esq.*, for the petitioner.
*James H. Yeatman, Esq.*, for the respondent.

728

## OPINION.

HILL: The questions presented for determination are:

(1) Was the petitioner entitled to use the reserve method of handling bad debts in its income tax return for the year 1933?

(2) Was petitioner entitled to deduct either the addition to its reserve for bad debts for the taxable year, or the following items as bad debts specifically ascertained and charged off during the taxable year:

| | |
|---|---:|
| Note of Cyrus W. Scott | $4,114.94 |
| Interest on above note | 641.53 |
| Cyrus W. Scott advances | 4,500.00 |
| Due from stockholders | 564.78 |
| Total | 9,821.25 |

Relative to the first question presented, petitioner concedes that prior to 1932 it used the specific ascertainment method of charging off bad debts and that it changed to the reserve method on its books of account and in its income tax return for 1932, without having first requested or secured permission from the Commissioner to do so. Petitioner contends, however, that the Commissioner acquiesced in such change and gave implied permission therefor by accepting and closing its 1932 return without adjustment and that it is therefore entitled to use the reserve method in its accounts and in its income tax return for 1933. Respondent, on the other hand, contends that under the circumstances here his acceptance and closing of the return for 1932 without adjustment did not amount to permission to change to the reserve method.

The pertinent parts of the applicable statute [1] and regulations [2] are set forth in the margin:

Petitioner relies on an implied rather than direct permission of the Commissioner to change from the method of specific ascertainment of bad debts to reserve for bad debts and bases such implication upon the fact that the Commissioner accepted and closed without adjustment its 1932 return in which it used the reserve method and deducted the additions to reserve for bad debts in that year from gross income. Petitioner cites the following cases as supporting the claim that the Board and the courts have held that such action on the part of the Commissioner constitutes the granting of the permission required by the cited statute and regulations: *Clark Brown Grain Co.*, 18 B. T. A. 937; *Ganahl Lumber Co.*, 21 B. T. A. 118; *Gardner Governor Co.*, 5 B. T. A. 70; *Greylock Mills* v. *Blair*, 293 Fed. 846; *Home Ice Cream & Ice Co.*, 19 B. T. A. 762; *Jonas Cadillac Co.*, 16 B. T. A. 932; *Norwich Woolen Mills Corporation*, 18 B. T. A. 303.

The facts in the instant case distinguish it from the cases cited above in that in all of those cases a tax liability was shown, either on the return or in the adjustments made therein by the Commissioner, while in the instant case there was no tax liability shown by the return, no field examination of petitioner's accounts was made,

---

[1] Revenue Act of 1932.—

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(j) BAD DEBTS.—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

[2] Regulations 77.—

ART. 191. *Bad debts.*—Bad debts may be treated in either of two ways—

(1) By a deduction from income in respect of debts ascertained to be worthless in whole or in part, or

(2) By a deduction from income of an addition to a reserve for bad debts.

Taxpayers were given an option for 1921 to select either of the methods mentioned for treating such debts. (See article 151, Regulations 62.) The method used in the return for 1921 must be used in returns for subsequent years and in returns under the Revenue Act of 1932 unless permission is granted by the Commissioner to change to the other method. A taxpayer filing a first return of income may select either of the two methods subject to approval by the Commissioner upon examination of the return. If the method selected is approved, it must be followed in returns for subsequent years, except as permission may be granted by the Commissioner to change to another method. Application for permission to change the method of treating bad debts shall be made at least 30 days prior to the close of the taxable year for which the change is to be effective. (See also article 195.)

Where all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. \* \* \* In determining whether a debt is worthless in whole or in part the Commissioner will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. Partial deductions will be allowed with respect to specific debts only.

and the Commissioner made no adjustment of the accounts as stated in the return. Furthermore, in the present case, it was apparent from the return that no adjustment which the Commissioner might make would result in a tax liability.

Petitioner's income tax return for 1932 showed a total of deductible losses of $116,633.69 in excess of income. The addition to reserves for that year shown as a deduction in such return was $39,993.02 and the net amount of such reserve at the end of that year was $19,574.10. Had the Commissioner disallowed in toto the deduction of $39,993.02 as reserve for bad debts in petitioner's tax return for 1932, there would have still remained deductible losses of $76,640.67 in excess of income for that year. If the Commissioner had disallowed the deduction of only that part of the reserve represented by the net amount of such reserve at the end of the year 1932, there would have remained deductible losses of $97,057.59 in excess of income for that year. In neither event would the return have shown a tax liability of petitioner for 1932. It being apparent from the return as filed that no action which the Commissioner might take with reference to the deduction of reserve for bad debts would result in a tax liability against petitioner for that year, no field investigation was made of petitioner's accounts and the audit of the return consisted solely of proving the computation thereof. Since the return showed conclusively that petitioner had no income tax liability in 1932, regardless of whether it followed the specific ascertainment method of charging off bad debts or used the reserve method in that respect, it would have been a futile act for the Commissioner to disallow the deduction of the reserve for bad debts and his failure to disallow such deduction is without negligence. There was no affirmative action by the Commissioner in this case, such as characterized the cases cited above, upon which to base an implication of consent to a change in the accounting methods. Under such circumstances we think it was not incumbent upon the Commissioner, in order to avoid a waiver of compliance with the regulations, to deny the deduction in question and that his failure to do so did not amount to implied permission to change from the one method of accounting to the other. Cf. *Ross B. Hammond, Inc.*, 36 B. T. A. 497, 506, wherein we said: "We are unable to see, in the circumstances in this case, that mere inaction by the Commissioner is evidence of the voluntary relinquishment of right which is essential to waiver, and plainly estoppel does not lie, there being no showing of detriment to petitioner."

Accordingly, we hold that petitioner was not entitled to the deduction of $33,014.86, claimed as additions to reserve for bad debts. Our holding on this point disposes of the assigned error based upon the disallowance by respondent of a deduction of $5,697.72 representing that part of the above claimed additions to reserve which is in excess

of $27,317.14, the amount of bad debts charged to such reserve by petitioner.

The next question for consideration is whether petitioner is entitled to deduct as debts ascertained to be worthless and charged off in the taxable year the items totaling $9,821.25 set forth in our findings of fact. Petitioner charged those items to the reserve for bad debts. The first of those items is $4,114.94 representing a charge-off for partial worthlessness of the principal of a note by Cyrus W. Scott to petitioner and the second of such items is $641.53, representing a charge-off for worthlessness of the total amount of accrued interest on such note. This note was for the principal sum of $15,094.94, with interest at 6 percent per annum, dated April 11, 1930, and due April 11, 1931. It was secured by 109.8 shares of stock of petitioner corporation, having a book value at the time of such charge-off of $150 to $175 per share, according to the testimony of L. R. Bryan, Jr., vice president of the Second National Bank of Houston, and a stockholder and director of petitioner. In view of this testimony, we can find no justification for the charge-off for partial worthlessness either as to the principal of the note or accrued interest thereon, and the deduction therefor is disallowed.

The third item included in the claimed deduction of $9,821.25 is $4,500, representing the total of moneys advanced monthly to Cyrus W. Scott in 1932 and 1933 after he had resigned as president and manager of petitioner, which petitioner claims was to be repaid to it. After his resignation as indicated Scott was elected chairman of the board of directors of petitioner in order that his name might continue to be connected with the corporation. The evidence is clear that this advance was made to Scott for the use of his name in connection with petitioner's business. The Cyrus W. Scott Manufacturing Co. was organized by Cyrus W. Scott and he had many personal friends and friends in trade circles, which fact was thought to be commercially valuable to petitioner. We are convinced that it was never intended that Scott should repay these advances, but that they were paid to him as salary for the use of his name and for acting in a nominal official capacity. This conclusion is further fortified by the fact that no time was fixed for the repayment of these advances and no interest thereon was charged or provided for. Also, petitioner continued to advance Scott $150 a month through January and February 1934, after charging off in December 1933 as a bad debt the $4,500 advanced to him in 1932 and 1933. The deduction of this item of $4,500 is disallowed for the reason that no part of it represented a debt owing by Scott to petitioner. However, $2,000 of the $4,500 was paid by petitioner to Scott in the taxable year as salary and petitioner is entitled to deduct that amount as a business expense. Respondent concedes petitioner's right to this deduction.

The fourth and last item included in the claimed deduction of $9,821.25 is $564.78 owed to petitioner by two of its stockholders, R. B. Mundine and D. E. Ouzts. Beyond the fact that this item was charged as a bad debt to the reserve for bad debts in the taxable year, no evidence was offered as to its worthlessness or when, if at all, it became worthless. Petitioner is, therefore, not entitled to a deduction for this item.

*Judgment will be entered under Rule 50.*