NIAGARA FALLS COACH LINES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Niagara Falls Coach Lines, Inc. v. Commissioner
Docket No. 10944-75
United States Tax Court
T.C. Memo 1977-269; 1977 Tax Ct. Memo LEXIS 172; 36 T.C.M. (CCH) 1088; T.C.M. (RIA) 770269; August 15, 1977, Filed John G. Dowd for the petitioner. W. Robert Abramitis for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioner's income tax and additions to tax: Addition to tax TYE
Deficiency
[1]Sec. 6651(a) 6/30/71
$4,109.40
6/30/72
1,848.86
$369.77
6/30/73
401.30
20.07
6/30/74
380.57
38.06
Concessions having been made by petitioner, the sole issue remaining for decision is the extent *173 to which amounts, paid by petitioner to its president and sole shareholder, constitute reasonable compensation for services performed and are deductible as such under section 162(a)(1). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner is a New York corporation with its principal place of business located at Niagara Falls, New York, at the time of filing the petition herein. It filed its Federal corporate income tax returns for the taxable years involved herein with the North-Atlantic Service Center, Andover, Massachusetts. Petitioner's principal business activities during these years were the transportation of school children to and from school and providing charter bus service. For some years prior to April 21, 1966, Michael J. Argy, Sr., ran a bus company under the name "Niagara Falls Coach Lines," and from April 21, 1966 (when petitioner was incorporated and took over the operations of Niagara Falls Coach Lines), until April 12, 1967, he was the sole shareholder of petitioner. Since the latter date, Joseph R. Argy (Argy) has been *174 petitioner's sole shareholder. During 1966 and at all pertinent times thereafter, Argy has been responsible for the overall management of the business and has been the president and treasurer of petitioner since November 11, 1967. As such, he arranged the scheduling of buses, negotiated new contracts for the transportation of school children, negotiated labor contracts, handled petitioner's public relations, supervised the maintenance of petitioner's buses, and arranged financing for the acquisition of new buses to be used in petitioner's operations. In years prior to fiscal 1974, Argy typically worked approximately 50 hours per week; in fiscal 1974, Argy worked in excess of that amount. In addition to his normal duties during fiscal 1974, Argy prepared an analysis of the "9010" program in operation in the city of Niagara Falls, [2] and prepared and submitted a bid for the "9010" contract for the 1974-75 academic year. Petitioner's bid was accepted. *175 For the taxable years or periods from 1967 through 1975, petitioner's gross revenue, taxable income (before net operating loss deduction) as reported on its tax returns, and the amounts claimed by petitioner as compensation paid to Argy are as follows: Gross
Taxable
Argy's Period
Revenue
Income
Compensation
1/67-12/67
$196,578.01
[2,290.35)
$10,600.00
1/68-12/68
261,195.86
7,652.58
11,400.00
1/69-12/69
272,794.81
(35,114.13)
15,759.05
1/70- 6/70
180,781.75
3,714.79
11,865.75
7/70- 6/71
424,857.39
46,837.44
22,253.24
7/71- 6/72
431,752.19
18,300.76
29,997.34
7/72- 6/73
424,991.71
8,053.68
26,755.85
7/73- 6/74
427,771.54
(18,990.26)
50,969.36
7/74- 6/75
731,615.06
44,936.19
50,005.71
Petitioner has never paid a dividend. From 1969 to 1973, Argy was one of three shareholders in AGT Corporation (AGT). During this period, Argy performed an insignificant amount of work for AGT, another individual being responsible for the day-to-day operation of AGT. On April 18, 1973, Argy became the sole shareholder of and the individual responsible for the operation of AGT. AGT owned and operated sightseeing vehicles *176 in and around Niagara Falls, New York. It conducted its operations each year approximately from May 15 through October 15, with the bulk of its activities conducted during that portion of each summer in which schools are not in session, a slack period of petitioner's operations. During the taxable year in question, Argy spent an average of ten to fifteen hours per week on AGT's affairs, although he made himself available whenever problems arose. [3]
On its fiscal 1974 return, petitioner claimed a deduction of $50,969.36 for compensation paid to Argy. Of this amount, $27,000 was paid in the form of periodic salary checks, and was subject to W-2 withholding. The remaining $23,969.36 represents amounts paid out frequently, irregularly, and in odd and unequal amounts by petitioner, and payable at Argy's direction either to Argy or to others on Argy's behalf. At the time the checks were drawn, these amounts were recorded on petitioner's books according to the payee of the check. They were classified as compensation only when petitioner's accountant prepared semi-annual *177 reports, at which time Argy would decide which payments were to be treated as compensation, and which were to be treated as loans to shareholders. All of such payments for fiscal 1974 were treated as compensation. In his personal income tax returns for the calendar years 1973 and 1974, Argy reported as compensation only the amounts received from petitioner which were subject to withholding. The additional amounts which petitioner claimed as compensation were reported by Argy as other income received from petitioner. In his notice of deficiency, respondent determined that only $30,769.23 was a reasonable allowance for compensation for personal services actually rendered by Argy. OPINION The sole issue herein is whether the entire amount paid by petitioner to or for the benefit of Argy is deductible under section 162(a) as "a reasonable allowance for salaries or other compensation for personal services actually rendered." The question is one of fact determined upon the basis of all the facts and circumstances. Levenson and Klein, Inc. v. Commissioner,67 T.C. 694, 711 (1977). The burden of proof is on the petitioner. Botany Worsted Mills v. United States,278 U.S. 282 (1929); *178 Rule 142(a), Tax Court Rules of Practice and Procedure. Where the claimed deduction is for compensation paid by a corporation to its sole shareholder, the transaction must be closely scrutinized to insure that the payments were not distributions of corporate profits. See Darco Realty Corp. v. Commissioner,301 F.2d 190, 191 (2d Cir. 1962), affg. T.C. Memo. 1961-110; Levenson and Klein,Inc. v. Commissioner,supra.
Petitioner claimed a deduction for compensation paid to Argy in the amount of $50,969.36 for the fiscal year 1974. Of this amount, respondent allowed $30,769.23, which represents a 15 percent increase over the amount paid to petitioner in the previous fiscal year. The amount claimed herein is between approximately 70 percent and 125 percent more than the salary paid to Argy in each of the three prior taxable years. Petitioner has made no claim that the amounts paid to Argy in fiscal 1974 represented payments for services performed in prior years. Over the period 1971 through 1974, petitioner's gross receipts remained virtually constant, and petitioner's taxable income, increased by the amounts paid to Argy allegedly for *179 compensation, declined continuously (from $69,090.68 in fiscal 1971 to $31,979.10 in fiscal 1974). We have found, however, that Argy worked longer hours in fiscal 1974 than he had in prior years. A portion of this increased effort was spent preparing and submitting a bid for the "9010" contract; another portion was spent on the affairs of AGT. Argy's testimony concerning the time spent on each of these activities, as well as the length of his work week, does not provide sufficient proof of the increased services which he provided to petitioner as opposed to AGT or that whatever extra services he may have rendered in connection with the "9010" contract (which ultimately proved lucrative and contributed to substantially increased gross receipts and taxable income in the following fiscal year) are not adequately reflected in the 15 percent increase in the deduction allowed by respondent as against the amount of compensation paid to Argy in the prior fiscal year. Another factor which is probative of the reasonableness of compensation paid is the amount paid by comparable business to individuals performing comparable tasks. See section 1.162-7(b)(3), Income Tax Regs. Gary Williams, *180 comptroller of the National School Bus Service, testified that his company paid employees who had more limited responsibilities than Argy between $30,000 - $35,000 plus bonuses and fringe benefits. He further testified that if his company employed one individual to perform the duties which Argy performed for petitioner, he would be paid in the range of $40,000 - $50,000. We do not find this testimony to be useful in determining the reasonableness of the payments made to Argy. National School Bus Service is much larger than petitioner, operating in excess of 1300 buses in the northeastern United States and in the Chicago area; in fiscal 1974, petitioner operated 49 buses, solely in the Niagara Falls area. Clearly, the two operations are in no sense comparable. Moreover, National School Bus Service does not have any employees with responsibilities comparable to those of Argy, and Williams' testimony concerning the amount such an employee would make if employed by his company is pure conjecture. We are not obligated to accept such opinion testimony. See Pacific Grains, Inc. v. Commissioner,399 F.2d 603, 606 (9th Cir. 1968), affg. T.C. Memo. 1967-7. *181 Petitioner also introduced into evidence a group of reports of operating bus lines filed with the Commissioner of Transportation of the State of New York. The mere fact that these companies were operating in the same industry as petitioner does not mean that they are comparable.[4] Petitioner has failed to show that any of these companies operated a mix of school buses and charters comparable to petitioner, or that the responsibilities of the executive officers in these corporations were in any sense comparable to the responsibilities of Argy. [5]
*182 Finally, we note the combination of petitioner's failure to pay any dividends and at the same time radically increasing Argy's compensation. See Pacific Grains, Inc. v. Commissioner,supra.
Based upon the entire record and after taking into account the various factors to be considered in cases of the type involved herein (see Levenson and Klein, Inc. v. Commissioner,supra), we hold that petitioner has failed to carry its burden of proof that it is entitled to deduct any amount in excess of that determined by the respondent. Cf. Pacific Grains, Inc. v. Commissioner,supra.
In view of our conclusion, we need not resolve the further question raised by respondent, i.e. that the amounts in excess of the $27,000 subject to withholding should not be considered as compensation on the ground that such amounts when paid were not intended as such. We note in passing, however, that petitioner did treat these amounts as compensation on its tax return pursuant to determinations made during or shortly after the end of the fiscal year. On this basis, Paula Construction Co. v. Commissioner,58 T.C. 1055, 1058 (1972), *183 affd. without published opinion 474 F.2d 1345 (5th Cir. 1973), and Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1341 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974), can be distinguished. Cf. Cyrus W. Scott Manufacturing Co. v. Commissioner,37 B.T.A. 726, 733 (1938). [6]
Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩
2. Under this program, a school district would arrange transportation for each student living at least 1-1/2 miles from his/her school, and the state would reimburse the district for 90 percent of the cost of providing this transportation. Prior to the academic year 1974-75, the transportation under this program was provided by publicly owned and operated transit companies.↩
3. The record contains no indication as to the amount, if any, at any time paid by AGT to Argy for his services.↩
4. See Estate of Clarke v. Commissioner,T.C. Memo. 1976-328↩. 5. Even if we were to decide that these companies were comparable to petitioner, the reports do not support petitioner's position. Of the thirteen companies whose reports were introduced into evidence, petitioner has chosen (on brief and not through the testimony of any witnesses) to analyze data from only eight (without explaining its reasons for excluding the five other companies). In its analysis, petitioner computed the total compensation paid to all of the corporate officers for each company, and compared that amount to the gross revenue of that company. The ratio of compensation to gross revenue so determined was in excess of 11 percent. However, each of the eight companies employed more than one officer, and all but one employed three or more officers. Salaries paid by companies to numerous employees who performed, in aggregate, the services allegedly performed by Argy do not constitute persuasive evidence of the reasonableness of Argy's salary.See C.A. White Trucking Co. v. Commissioner,T.C. Memo. 1977-6, and Shiocton Lumber Co. v. Commissioner,T.C. Memo. 1974-132. The average ratio of compensation paid to the chief executive officer of each company to gross revenue for that company is less than 6 percent. If this is the proper comparison (and petitioner has failed to persuade us that it is not) then Argy's compensation, amounting to 11.9 percent of petitioner's gross revenues, was greatly in excess of the salaries paid to comparable chief executive officers.↩
6. We note that respondent in fact allowed a portion of the excess amounts as compensation.↩